## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BENJEMIN ALLEN THAYER and
EMILY HAY,

Case No. 25-cv-3801 (LMP/DLM)

Plaintiffs,

v.

BMO BANK, N.A.,

Defendant.

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS AND DENYING
PLAINTIFFS' MOTION TO
DISQUALIFY COUNSEL**

Benjemin Allen Thayer and Emily Hay, pro se.

Keith S. Moheban, **Stinson LLP, Minneapolis, MN**; and Jeffrey Jamison and Julie Rodriguez Aldort, **BMO Bank N.A., Chicago, IL**, for Defendant.

Plaintiffs Benjemin Allen Thayer and Emily Hay, acting pro se, bring various causes of action against Defendant BMO Bank, N.A. ("BMO"), relating to a hold BMO allegedly placed on a check deposited by Hay into her BMO bank account. *See generally* ECF No. 1. BMO moves to dismiss Plaintiffs' complaint, ECF No. 33, and Plaintiffs move to disqualify BMO's counsel, ECF No. 40. For the reasons below, Plaintiffs' motion to disqualify BMO's counsel is denied, and BMO's motion to dismiss is granted.

## FACTUAL BACKGROUND

Hay deposited a check in the amount of $87,835.66 into her BMO bank account on May 16, 2025. *See* ECF No. 1 ¶ 2; ECF No. 36-1 at 2–3. The check was issued by "Donna Marie Hay Estate, Courtney Stephens, Personal Representative" (the "Estate") from a

Regions Bank account with an address in Hoover, Alabama. ECF No. 36-1 at 2–3. The check was made payable solely to Hay and was endorsed solely by Hay. *Id.*

The same day Hay deposited the check, BMO issued a notice to Hay stating that due to the "Large Deposit" amount, the availability of all but $5,525.00 of the full deposit amount would be withheld for seven business days. *See* ECF No. 32-2; ECF No. 1 ¶ 15. The next day, May 17, 2025, BMO issued a notice to Hay stating that the entire deposit amount would be withheld for seven business days, citing "confidential information that indicates the check may not be paid." ECF No. 36-2 at 2;[1] *see* ECF No. 1 ¶ 16. BMO ultimately released the hold on May 23, 2025, five business days after the deposit. ECF No. 1 ¶ 18. Plaintiffs allege that because of the hold on Hay's deposit, they suffered a default judgment in Minnesota state court for nonpayment of rent on May 22, 2025, and were evicted on June 17, 2025. *Id.* ¶¶ 18–19.

Plaintiffs allege that BMO violated the Expedited Funds Availability Act ("EFAA") and its implementing regulations found at Title 12, Chapter II, Subchapter A, Part 229 of the Code of Federal Regulations ("Regulation CC").[2] *Id.* ¶¶ 31–35. Plaintiffs claim

---

[1]    Both the check deposited by Hay on May 16, 2025, ECF No. 36-1, and the hold notice sent by BMO to Hay on May 17, 2025, ECF No. 36-2, are attached as exhibits to BMO's motion to dismiss. Because both documents are "necessarily embraced by" and "do not contradict the complaint," the Court may consider them for purposes of deciding BMO's motion. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

[2]    As discussed in Part II of the Analysis, Plaintiffs also raised several claims under Minnesota statutory and common law, but they forfeited those claims in response to BMO's motion to dismiss.

$2,500,000 in damages for lost earnings, lost or damaged property, medical harms, damage to their credit, and emotional distress. *See id.* ¶¶ 19–20.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on September 29, 2025, ECF No. 1, and an application to proceed *in forma pauperis* ("IFP"), *e.g.*, ECF No. 2. They also filed a motion for a temporary restraining order and a motion for a preliminary injunction, seeking to obtain funds to secure housing while this case is pending. *See* ECF No. 4 at 2; ECF No. 8 at 3. On October 14, 2025, the Court granted Plaintiffs' IFP applications but denied their motions for a temporary restraining order and for a preliminary injunction. ECF No. 12 at 2–4. A summons was issued to BMO on December 18, 2025, ECF No. 19, and returned executed on February 5, 2026, ECF No. 20.

On February 19, 2026, BMO filed a motion seeking an extension of time to answer or otherwise respond to Plaintiffs' complaint. ECF No. 21. BMO asserted that despite Plaintiffs' references to numerous exhibits in their complaint, none of the exhibits were actually attached. *See* ECF No. 22 at 2; *see also* ECF No. 1-1 (identifying seven exhibits). BMO therefore sought an extension of its answer deadline until after Plaintiffs filed the referenced exhibits. ECF No. 22 at 1. In the related meet-and-confer statement, BMO's counsel, Keith Moheban of Stinson LLP ("Stinson"), asserted that he emailed Plaintiffs "at the email addresses they provided with their pleadings" and asked them to provide copies of the referenced exhibits, but Plaintiffs did not respond. ECF No. 23 at 1. Moheban also "attempted to call both plaintiffs at the phone numbers referenced in their pleadings," but the number listed for Thayer "was not in service," and shortly after leaving a message at

3

the number listed for Hay, Moheban received a text message stating: "Wrong number, no Emily or Benjamin here." *Id.*

The Court granted BMO's motion on February 20, 2026, and ordered Plaintiffs to file and serve the exhibits referenced in their complaint by February 27, 2026. ECF No. 26. Plaintiffs did not file the exhibits by that date, but they contacted the Court on March 19, 2026, to request a brief extension. ECF No. 31. Given Plaintiffs' pro se status, the Court sua sponte extended the deadline for Plaintiffs to file the exhibits to April 2, 2026. *Id.* On that date, Plaintiffs filed 74 documents containing a total of 584 pages, the majority of which were not referenced in Plaintiffs' complaint and do not appear relevant to Plaintiffs' allegations or claims.[3] For example, Plaintiffs filed documents relating to federal trademark applications submitted by BMO, *see* ECF No. 32-31; filings from an unrelated bankruptcy proceeding involving a third party, *see, e.g.*, ECF Nos. 32-39, 32-43, 32-65; and filings from the high-profile, but entirely unrelated, Feeding Our Future criminal cases, *see, e.g.*, ECF Nos. 32-67, 32-72.

BMO moved to dismiss Plaintiffs' complaint on April 9, 2026. ECF No. 33. In the related meet-and-confer statement, Moheban again stated that he attempted to contact Plaintiffs by email to discuss the issues raised in BMO's motion, and Plaintiffs again did not respond to Moheban's emails. ECF No. 35 at 1. On April 22, 2026, Plaintiffs responded to BMO's motion by filing an 88-page amended complaint naming seven new

---

[3] Approximately 30 of the documents appear to be "cover sheets" that were filed separately from the exhibits they are intended to reference. *See, e.g.*, ECF Nos. 32-1, 32-3, 32-5, 32-8. Plaintiffs also submitted several "placeholders" for exhibits that were not filed with or received by the Court. *See, e.g.*, ECF No. 32-6, 32-9, 32-14, 32-17.

defendants and raising a host of new claims that were well beyond the scope of Plaintiffs' initial complaint and only tangentially related, at best, to their initial claims against BMO.[4] *See generally* ECF No. 39.  Plaintiffs also filed a motion to disqualify Moheban specifically, and Stinson generally, as BMO's counsel in this case.  *See generally* ECF Nos. 40, 40-1.

On April 23, 2026, the Court entered an order striking Plaintiffs' amended complaint for noncompliance with Rule 8(a)(2) and Rule 20(a)(2) of the Federal Rules of Civil Procedure.  *See* ECF No. 42 at 2–4.  In consideration of Plaintiffs' pro se status, the Court offered Plaintiffs the choice of proceeding with their original complaint (and responding to BMO's motion to dismiss the original complaint), or seeking leave to amend their complaint in accordance with this District's Local Rules with the understanding that any proposed amended pleading would be subject to review under 28 U.S.C. § 1915(e)(2)(B). *Id.* at 3–4.

Plaintiffs chose to respond to BMO's motion to dismiss (and, therefore, to proceed with their original complaint).  *See* ECF No. 48.  The Court has received all briefing relating to both BMO's motion to dismiss and Plaintiffs' motion to disqualify Stinson as BMO's counsel.[5]  *See* ECF No. 54 at 2.

---

[4]    By contrast, Plaintiffs' original complaint contained only 11 pages, including signature blocks, an exhibit list, and a certificate of service.  *See generally* ECF No. 1.

[5]    The Court struck an improper reply filed by Plaintiffs relating to their nondispositive motion to disqualify BMO's counsel and denied a motion by Plaintiffs seeking leave to file a sur-reply in opposition to BMO's motion to dismiss.  *See* ECF No. 54.

## ANALYSIS

The Court begins by addressing Plaintiffs' motion to disqualify BMO's counsel before turning to the merits of BMO's motion to dismiss Plaintiffs' complaint. For the reasons discussed below, the Court denies Plaintiffs' motion to disqualify BMO's counsel and grants BMO's motion to dismiss.

## I.     Plaintiffs' Motion To Disqualify BMO's Counsel

Attorney disqualification is committed to the Court's discretion. *Jenkins ex rel. Agyei v. Missouri*, 931 F.2d 470, 484 (8th Cir. 1991). Because of the "potential for abuse," disqualification motions are "subjected to particularly strict judicial scrutiny." *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996) (internal quotation marks omitted) (citation omitted). A party's right to choose its own counsel "is an important public right and a vital freedom that should be preserved," and the "extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (citation omitted). This District has adopted the Minnesota Rules of Professional Conduct for purposes of attorney disqualification. *See* D. Minn. L.R. 83.6(a); *Arnold v. Cargill Inc.*, No. 01-cv-2086 (DWF/AJB), 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004). "A party seeking disqualification based on alleged violations of the Minnesota Rules of Professional Conduct has the burden of showing that disqualification is warranted." *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-cv-609 (NEB/LIB), 2020 WL 12442105, at *7 (D. Minn. Aug. 21, 2020) (citation omitted).

Plaintiffs lack any valid basis to seek disqualification of Stinson as BMO's counsel. Plaintiffs first argue that Stinson must be disqualified because of purported conflicts of interest. *See* ECF No. 40-1 at 17–19. But "[o]nly clients or former clients generally have standing to seek disqualification based on a conflict of interest." *Cane v. Stevenson*, No. 25-cv-3045 (LMP/LIB), 2026 WL 972947, at *3 (D. Minn. Apr. 10, 2026) (alteration in original) (quoting *Der v. Connolly*, No. 08-cv-6409 (PJS/JJG), 2009 WL 10687762, at *6 (D. Minn. Dec. 1, 2009)). Nowhere in the 68 pages of Plaintiffs' motion and supporting exhibits do Plaintiffs even suggest they have ever been clients of Stinson. *See generally* ECF Nos. 40, 40-1–40-12. Plaintiffs therefore lack standing to seek Stinson's disqualification based on any purported conflicts of interest. *Cane*, 2026 WL 972947, at *3.

Plaintiffs next assert that Stinson must be disqualified because one of its attorneys, who has not appeared in this action, is a "necessary witness" with respect to a "$0.00 trademark transfer" and "UCC filing irregularities" that were at issue in unrelated cases. ECF No. 40-1 at 20; *see* ECF No. 40 at 1–2. "Blanket allegations that an attorney's testimony is relevant to a party's claim is an insufficient basis upon which to discern whether the attorney will truly be a necessary witness." *Macheca Transp.*, 436 F.3d at 833 (internal quotation marks omitted) (citation omitted). And Plaintiffs do not attempt to explain how the Stinson attorney's testimony relating to the issues they identify is relevant, much less "strictly necessary," to any aspect of any of Plaintiffs' claims in *this* case. *Id.*

Plaintiffs also assert that Moheban, who has appeared on BMO's behalf here, is a "necessary witness" and accuse him of bad-faith conduct as it relates to the emails

Moheban sent to Plaintiffs in an effort to meet and confer with them as required by this District's Local Rules governing civil motion practice. *See* ECF No. 40-1 at 20; *see also* ECF No. 35; D. Minn. L.R. 7.1(a).[6] Plaintiffs state that they never received the emails because their "email providers independently filtered [them] to spam," ECF No. 40-1 at 10, and they argue that Moheban's purported failure to (somehow) determine that fact and to follow up with Plaintiffs—despite their engagement with Moheban via email "on other matters in this case," ECF No. 35 at 1—is "directly at issue" in Plaintiffs' "forthcoming sanctions motion," ECF No. 40-1 at 20, which they have not actually filed. Plaintiffs' argument is incoherent and meritless. Nothing about Moheban's conduct, even in Plaintiffs' telling, appears to have been in bad faith or to have violated Local Rule 7.1(a).[7] Moreover, it is not Moheban's or anyone else's responsibility to ensure that Plaintiffs monitor their email inboxes,[8] nor is Moheban or anyone else responsible for Plaintiffs

---

[6]     The undersigned also requires parties "to make the meet-and-confer requirement of Local Rule 7.1(a) productive." To that end, the undersigned requests that the parties "provide in the meet-and-confer statement the manner in which the parties met (whether in person, video conference, telephone, or e-mail), the date they met, and the length of time the parties engaged in discussions." Judge Laura M. Provinzino, *Practice Pointers and Preferences* at 1–2 (July 2025), https://www.mnd.uscourts.gov/sites/mnd/files/LMP.pdf [https://perma.cc/UX7U-6SMQ].

[7]     Even if Moheban did violate Local Rule 7.1(a), the Court would excuse the violation given the circumstances. *See Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1055 (8th Cir. 2025) (quoting *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 489 (8th Cir. 1992)) ("[I]t is within the district court's broad discretion to 'determine what departures from its [local] rules may be overlooked.'").

[8]     The Court notes that both Plaintiffs applied for and were granted e-filing privileges in this case, "consented to electronic service" at the email addresses provided in their complaint, and "agreed to waive service by other means" for all other filings "except when electronic service is not allowed under the rules." ECF Nos. 14–15. As such, Plaintiffs

providing invalid phone numbers in their complaint.  *See* ECF No. 23 at 1.  And in any event, Plaintiffs make no attempt to show how Moheban's testimony relating to this incident would be necessary "at trial."  *See* Minn. R. Prof. Cond. 3.7(a).

Plaintiffs' remaining assertions are similarly meritless.  Plaintiffs make unsupported accusations regarding the supposed inability of the Minnesota Office of Lawyers Professional Responsibility ("OLPR") to "independently regulate Stinson," ECF No. 40 at 3, because of various Stinson attorneys' purported involvement with the Minnesota Lawyers Professional Responsibility Board, ECF No. 40-1 at 10–13.  Plaintiffs cite, as evidence of this purported conspiracy, that the OLPR dismissed ethics complaints Plaintiffs filed on March 31, 2026, against two Stinson attorneys who are not involved in this case relating to their allegedly unethical conduct in unrelated matters.  *Id.* at 10.  Plaintiffs also cite changes to a website owned by an unrelated third party that Stinson represented in an unrelated case as evidence of "intentional spoliation" of "litigation-relevant materials."  ECF No. 40-2 ¶ 9.  Again, Plaintiffs do not articulate any reason that any of these unsubstantiated allegations has anything to do with any of the issues in *this* case, or how any of this alleged conduct "threatens to work a continuing taint" on *these* proceedings.  *Arnold*, 2004 WL 2203410, at *5.  Plaintiffs' argument amounts to nothing more than spurious allegations of some nebulous and far-reaching conspiracy involving Stinson attorneys that are completely irrelevant to this case.

---

were aware that they would receive communications and other important information relating to this case via email.

At bottom, Plaintiffs have not met their burden of showing that disqualification is warranted. *Speed RMG Partners*, 2020 WL 12442105, at \*7. Rather, Plaintiffs' motion smacks of the kind of abuse that necessitates "particularly strict judicial scrutiny" of disqualification motions. *Harker*, 82 F.3d at 808 (citation omitted). The Court therefore denies Plaintiffs' motion in its entirety.[9]

## II.    BMO's Motion To Dismiss Plaintiffs' Complaint

Plaintiffs allege that the hold BMO placed on Hay's deposit was unlawful under the EFAA and Regulation CC. ECF No. 1 ¶¶ 31–35. Plaintiffs also initially raised claims under Minnesota law for alleged violations of the Minnesota Unfair and Deceptive Trade Practices Act ("MUDTPA"), common law conversion, civil theft, fraud, and negligence, *id.* ¶¶ 36–45, and purported to assert their claims as representatives of a putative class of plaintiffs, *id.* ¶¶ 23–30. BMO moves to dismiss all of Plaintiffs' claims. *See generally* ECF No. 34.

In their response to BMO's motion, Plaintiffs state that they "do not defend" their class allegations and their MUDTPA, conversion, and civil theft claims. ECF No. 48 at 12. And although Plaintiffs did not expressly waive their fraud and negligence claims, they did not respond to BMO's arguments relating to those claims and instead focus solely on their EFAA claims in response to BMO's motion. *See generally id.*; ECF No. 34 at 9–15.

---

[9]    This includes Plaintiffs' alternative request for appointment of a special master. ECF No. 40-1 at 23–24. Appointment of a special master is "the exception and not the rule in judicial administration," and the decision whether to appoint a special master is committed to the Court's discretion. *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956). Appointment of a special master is unwarranted here.

Consequently, Plaintiffs have forfeited all but their EFAA claim. *See Dorosh v. Minn. Dep't of Hum. Servs.*, No. 23-cv-1144 (ECT/LIB), 2023 WL 6279374, at *9 (D. Minn. Sept. 26, 2023) ("A plaintiff waives its claims by failing to respond to a defendant's arguments on a motion to dismiss."); *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases). The Court therefore grants BMO's motion to dismiss as to Plaintiffs' claims under Minnesota law and proceeds with analyzing only Plaintiffs' EFAA claims. *See Dorosh*, 2023 WL 6279374, at *9; Fed. R. Civ. P. 41(b) (stating "a defendant may move to dismiss . . . any claim against it" if "the plaintiff fails to prosecute" the claim); *see also Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it.").

BMO moves to dismiss Thayer's EFAA claim under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. ECF No. 34 at 4–5. Separate from the issue of Thayer's standing, BMO also contends that both Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* at 6–8. Having reviewed the relevant materials in the record and considered the parties' arguments, the Court concludes that Thayer lacks standing and that Hay has not stated a plausible claim for relief.

### A.   Standing

BMO first argues that Thayer lacks standing to assert a claim under the EFAA because he "is a stranger to the deposit relationship" between Hay and BMO and, as a

result, Thayer "cannot legally establish any duty owed [to] him by BMO." ECF No. 34 at 4–5. The Court agrees.

The jurisdiction of federal courts "is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). To establish standing, a plaintiff must show that he (1) has "suffered an injury in fact," (2) that is "fairly traceable" to the defendant's conduct, and (3) that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy the injury-in-fact requirement, the plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs' EFAA claim is premised on the allegation that BMO placed an unlawful and improper hold on the check Hay deposited on May 16, 2025, which delayed Hay's access to the funds and resulted in various harms to Plaintiffs. *See* ECF No. 1 ¶¶ 18–19, 31–45. But Hay was the sole payee identified on the check, Hay solely endorsed the check, and the check was deposited into Hay's bank account. *See* ECF No. 36-1 at 2–3; *see also* ECF No. 48 at 4 ("After Hay saw *in her online account* that the promised $5,525 had not been made available, Hay initiated a call to BMO to ask why." (emphasis added)); ECF No. 32-7 at 1–2 (Hay identifying herself in a call with BMO's Fraud Department as the "account holder"). Further, the hold notices BMO sent were addressed solely to Hay. *See* ECF No. 32-2; ECF No. 36-2 at 2. Nothing in Plaintiffs' complaint suggests that Thayer

12

was the intended payee or recipient of the check or, for that matter, that he even has a BMO bank account. It is irrelevant that Hay "authorized [Thayer's] participation in the BMO deposit and related bank communications" or that Thayer "was present throughout the deposit." ECF No. 48 at 10. Neither of those things establishes that Thayer had a legally protected interest in Hay's bank account or the funds Hay deposited, so BMO withholding the availability of those funds from Hay is not causally connected to any of Thayer's purported injuries for purposes of standing. *See Diocese of St. Cloud v. Arrowood Indem. Co.*, No. 17-cv-2002 (JRT/LIB), 2018 WL 296077, at *4 (D. Minn. Jan. 4, 2018) (finding certain plaintiffs lacked standing to raise insurance-coverage claims against two insurance companies because the plaintiffs did not "allege[] that they were insured by" the companies or "allege[] that they were assignees or third-party beneficiaries" of a co-plaintiff's insurance contracts and, therefore, had "no rights or interests in the contracts").

At most, the complaint alleges that *Hay* suffered an "invasion of a legally protected interest" because of BMO's conduct. *Spokeo*, 578 U.S. 339 (citation omitted). And although Thayer and Hay presumably have some sort of relationship—the nature of which is not actually alleged in the complaint—it is well established that a plaintiff "must assert his own legal rights and interests" to establish standing and "cannot rest his claim to relief on the legal rights or interests" of others.[10] *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

---

[10] The Supreme Court has recognized a "limited" exception to this rule under which a litigant may establish "third party standing to assert the rights of another" if the litigant establishes that: (1) he "has a 'close' relationship with the person who possesses the right"; and (2) "there is a 'hindrance' to the possessor's ability to protect [her] own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). Even assuming Thayer and Hay have a sufficiently close relationship, Hay is

Therefore, Thayer does not have standing, and his EFAA claim must be dismissed. *See Diocese of St. Cloud*, 2018 WL 296077, at *4.

## B. Failure To State a Claim

When considering a Rule 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 627 (8th Cir. 2025). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pro se complaints "are to be construed liberally," but "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokken v. Hennepin County*, 140 F.4th 445, 450 (8th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mere recitations of the elements of a cause of action are insufficient to state a plausible claim for relief, and the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion," the Court also may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, . . . items appearing in the record of the case, and exhibits attached to the complaint whose

a party in this case and clearly is not hindered from bringing suit to "protect [her] own interests," so the exception does not apply. *See id.*

14

authenticity is unquestioned." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted).

Hay alleges that BMO violated the EFAA by: (1) "failing to make at least $5,525" of the funds she deposited by "qualifying cashier's check" available by "the next business day" after her deposit; (2) "imposing an extended hold without reasonable, individualized cause to doubt [collectability]"; and (3) "failing to provide timely, specific written notice stating the factual basis and availability date." ECF No. 1 ¶¶ 32–34. BMO argues that Hay fails to state a plausible claim because it complied with Regulation CC's requirements for withholding the funds Hay deposited. *See* ECF No. 34 at 6–8.

BMO is correct. As a preliminary matter, Hay's EFAA claim is premised on the allegation that the check she deposited was a "qualifying cashier's check." ECF No. 1 ¶ 32. Regulation CC defines a cashier's check as one that is: (1) drawn on a bank; (2) signed by an officer or employee of the bank on behalf of the bank as drawer; (3) a direct obligation of the bank; and (4) provided to a customer of the bank or acquired from the bank for remittance purposes. 12 C.F.R. § 229.2(i). Banks must "make funds deposited in an account by [cashier's] check available for withdrawal not later than the business day after the banking day on which the funds are deposited." *Id.* § 229.10(c)(v). But the check Hay deposited was not a cashier's check under Regulation CC because it was drawn on the Estate's bank account, not a bank itself, and was not signed by a bank officer or employee on the bank's behalf.[11] *See* ECF No. 36-1 at 2. Nor is there any indication that the check

---

[11]   Plaintiffs allege that the check was a "qualifying cashier's check," ECF No. 1 ¶ 32, and the Court generally must accept the factual allegations in the complaint as true, *Brown*,

was a direct obligation of the Estate's bank or was provided to the Estate for remittance purposes. *See id.* at 2–3; *see generally* ECF No. 1.

Instead, the check Hay deposited was a personal check issued by the Estate from its non-BMO bank account in Alabama. *See* ECF No. 36-1 at 2. More specifically, the check was a "[n]onlocal check" because it was "payable by, through, or at a nonlocal paying bank." 12 C.F.R. § 229.2(v); *see* ECF No. 36-1 at 2. Unlike cashier's checks, Regulation CC does not require that funds deposited by nonlocal checks be made available the next business day. Rather, funds deposited by a nonlocal check generally must be made "available for withdrawal not later than the fifth business day following the banking day on which funds are deposited." 12 C.F.R. § 229.12(c)(1)(i). And there are exceptions to this requirement: in the case of "[l]arge deposits"—meaning those "in excess of $6,725"— or if the depositary bank "has reasonable cause to believe that the check is uncollectible from the paying bank," the depositary bank may hold the funds for a "reasonable period of time" beyond five business days. *Id.* § 229.13(b), (e)(1), (h). If a bank extends the time when funds will be available for withdrawal based on one of these exceptions, it must notify the depositor in writing of the "amount of the deposit that is being delayed," the "reason the exception was invoked," and the "time period within which the funds will be available for withdrawal." *Id.* § 229.13(g)(i). The notice must be provided either "at the

---

131 F.4th at 627. But when a "written instrument" whose contents are incorporated into a complaint "'contradicts allegations in the complaint . . . the exhibit trumps the allegations.'" *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 996 (D. Minn. 2013) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)), *aff'd*, 823 F.3d 462 (8th Cir. 2016).

16

time of the deposit" or "as soon as practicable" if "the facts upon which a determination to invoke one of the exceptions" are discovered "after the time of the deposit." *Id.* § 229.13(g)(ii).

Here, the amount of Hay's deposit was $87,835.66, ECF No. 36-1 at 2, well in excess of Regulation CC's "[l]arge deposit" threshold, 12 C.F.R. § 229.13(b). BMO promptly notified Hay on May 16, 2025—the date of her deposit—that BMO was "delaying the availability" of $82,310.66 of the deposited funds because it was a "Large Deposit," and that those funds would be "available on the 7th business day" after that date. ECF No. 32-2; ECF No. 1 ¶ 2. The next day, BMO sent a second notice to Hay stating that it was delaying the availability of the full deposit amount based on "confidential information" causing BMO to believe "the check may not be paid," and again stating that the funds would be "available on the 7th business day after the day of [her] deposit." ECF No. 36-2 at 2. As a matter of law, BMO complied with Regulation CC's requirements for the hold it placed on Hay's deposit. *See* 12 C.F.R. § 229.13(b), (e)(1), (g)–(h). And BMO ultimately made the full amount of Hay's deposit available on May 23, 2025, five business days after the deposit was made,[12] ECF No. 1 ¶ 18, meaning BMO would have been in compliance with Regulation CC even if it had not placed a hold on the deposit, *see* 12 C.F.R. § 229.12(c)(1)(i).

Because the facts alleged in the complaint and incorporated by reference from the exhibits embraced by the complaint do not permit the Court to "draw the reasonable

---

[12]     The Court takes judicial notice of the fact that May 16, 2025, was a Friday, meaning that May 23, 2025—the following Friday—was five business days later.

17

inference that [BMO] is liable for" any violation of the EFAA or Regulation CC, Hay has not and cannot state a plausible claim for relief. *Brokken*, 140 F.4th at 450 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Hay's EFAA claim must be dismissed.

## III.    Type of Dismissal

Plaintiffs request leave to amend their complaint if the Court grants BMO's motion to dismiss. *See* ECF No. 48 at 12–13. BMO seeks dismissal of the complaint with prejudice, asserting that Plaintiffs "cannot state a valid EFAA/Regulation CC claim" and that "there is no point in authorizing further amendments that would be futile." ECF No. 50 at 8; *see also* ECF No. 34 at 1.

"A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice." *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019) (citing *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)). Dismissal without prejudice is typically favored in this Circuit, *see, e.g.*, *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983), and is warranted when a plaintiff's claims "might conceivably be repleaded with success," *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). However, dismissal with prejudice is appropriate when a plaintiff has shown "'persistent pleading failures' despite one or more opportunities to amend or when the record makes clear that amendment would be futile." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883 (D. Minn. 2024) (citations omitted).

Here, Plaintiffs previously attempted amendment of their complaint only to add seven new defendants and raise multiple new claims that were, at best, only tangentially related to BMO's alleged misconduct and the claims Plaintiffs initially raised against BMO. *See generally* ECF No. 39. The Court noted that Plaintiffs had, in effect, attempted to "fasten[] an entirely new and unrelated lawsuit onto the lawsuit that was already pending against BMO" and struck Plaintiffs' pleading for noncompliance with Rule 8(a)(2) and Rule 20(a)(2) of the Federal Rules of Civil Procedure. ECF No. 42 at 2–3. In doing so, and in consideration of Plaintiffs' pro se status, the Court offered Plaintiffs the opportunity to file a proper (and compliant) amended complaint or, alternatively, to proceed in this case on their initial complaint. *Id.* at 3–4. Plaintiffs chose the latter. And in response to BMO's motion to dismiss, Plaintiffs abandoned all but their EFAA claims, as discussed above. Plaintiffs therefore have had "one or more opportunities to amend" their complaint, *Harris*, 729 F. Supp. 3d at 883, and have not appropriately availed themselves of those opportunities.

That aside, Hay's EFAA claim cannot "conceivably be repleaded with success," *Craane*, 2019 WL 2147062, at *5, because, based on the facts alleged and incorporated by reference in the complaint, BMO fully complied with Regulation CC's requirements when it withheld Hay's deposit. Accordingly, Hay's claim is dismissed with prejudice.

On the other hand, the Court dismisses Thayer's EFAA claim for lack of standing. Although Thayer cannot conceivably establish Article III standing to bring suit against BMO based on the facts alleged in the complaint, when a plaintiff lacks standing, "the appropriate remedy is to dismiss without prejudice." *Wallace v. ConAgra Foods, Inc.*,

747 F.3d 1025, 1033 (8th Cir. 2014) (emphasis omitted).  And because the Court does not reach the merits of Plaintiffs' waived and forfeited state law claims, the Court also dismisses those claims without prejudice.  *Cf.* Fed. R. Civ. P. 41(b) (stating that "[u]nless the dismissal order states otherwise," a dismissal under Rule 41(b) or any rule other than Rule 41 "operates as an adjudication on the merits").

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motion To Disqualify Counsel (ECF No. 40) is **DENIED**; and

2.      BMO's Motion To Dismiss (ECF No. 33) is **GRANTED** as follows:

   a.      Hay's EFAA and Regulation CC claim is **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted;

   b.      Thayer's EFAA and Regulation CC claim is **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction; and

   c.      Plaintiffs' claims under Minnesota law are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 7, 2026                              *s/Laura M. Provinzino*
                                                 Laura M. Provinzino
                                                 United States District Judge

20